UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| STACEY COZAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:16-cv-4131-SLD-JEH |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, JOHN R. BALDWIN, and | ) | |
| STEPHANIE DORETHY, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Plaintiff Stacey Cozad's motion for partial summary judgment, ECF

No. 33, and Defendants Illinois Department of Corrections, John R. Baldwin, and Stephanie

Dorethy's motion for partial summary judgment, ECF No. 35.  For the reasons that follow, both

motions are GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

I.  **Plaintiff's Health Condition and Historical FMLA**

Plaintiff works as a correctional officer at Hill Correctional Center ("Hill"), which is part

of the Illinois Department of Corrections ("IDOC").  She has Hashimoto's disease, a chronic

autoimmune disorder.  As part of the disease, Plaintiff suffers from anxiety and periodic panic

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  The facts related here are, unless otherwise noted, taken from Plaintiff's statement of undisputed material facts, Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 34; Defendants' statement of undisputed material facts, Defs.' Mem. Supp. Mot. Summ. J., ECF No. 36; from Plaintiff's disputed material and immaterial facts and additional material facts, Pl.'s Resp., ECF No. 38; from Defendants' disputed material and immaterial facts and additional material facts, Defs.' Resp., ECF No. 40; Plaintiff's reply thereto, Pl.'s Reply, ECF No. 41; and from the exhibits.  Where the parties disagree about the facts, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor.  *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

attacks.  Plaintiff is able to recognize the early warning signs of a panic attack and take actions to prepare for it.

To cope with these panic attacks and other flare ups of her anxiety, Plaintiff sought and was approved for intermittent leave under the Family and Medical Leave Act ("the FMLA"), 29 U.S.C. §§ 2601– 2654, between January 1, 2014 and December 31, 2014, and January 1, 2015 to December 31, 2015.  With these requests, she submitted a certification form, completed by her health care provider.[2]  In January 2014, her health care provider explained Plaintiff was "unable to perform duties if [illegible] S/S [signs and symptoms]," Jan. 2014 FMLA Certification 8, Pl.'s Mot. Summ. J. App. 923, ECF No. 33-19 at 22; in April 2014, following IDOC's request for recertification, Plaintiff's health care provider wrote "Pt is not able to function when she is anxious, stress, otherwise she can" and explained "stress causes panic attack," Apr. 2014 FMLA Certification 3, Pl.'s Mot. Summ. J. App. 929, ECF No. 33-20 at 1; and in January 2015, she explained Plaintiff's "s/s are transient," that "[s]he can do her job usually," but if she is "stressed + anxious, she has problems w/ her job functions," "stress causes panic attacks," and "[s]he cannot effectively perform job duties as CO while having panic attack," Jan. 2015 FMLA Certification 3–4, Pl.'s Mot. Summ. J. App. 936–37, ECF No. 33-20 at 8–9.

## II.  September 2015 Incidents at Work

On September 16, 2015, Plaintiff reported for her shift.  At the main gate, a sergeant noted Plaintiff had a bible in her bag.  He told her this was not on the list of pre-approved items and she could not bring it into the facility.  Plaintiff responded that she brought it every day without issue.  The sergeant called the shift supervisor, who came to the main gate with a union

---

[2] Certification is "sufficient if it states (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; . . . and (4)(B) . . . a statement that the employee is unable to perform the functions of the [employee's] position[.]"  29 U.S.C. § 2613(b).

representative.  The stressful nature of the situation triggered a panic attack, though Plaintiff proceeded to attend roll call.  After, she told the shift supervisor she needed to go home and left.

A week later, Plaintiff was on duty in the tower at Hill.  Plaintiff began to feel overwhelmed by various stressors and started to cry.  She called the main gate to speak to her friend, Sergeant Hilgendorf.  Another sergeant answered the phone and then told the shift supervisor what had happened.  Plaintiff was reassigned from the tower to the infirmary for the remainder of her shift.  Plaintiff maintains that this episode was not a panic attack.  Cozad Dep. 99:2–5, Pl.'s Mot. Summ. J. App. 545, ECF No. 33-10 at 29.  Defendants assert this was a second panic attack at work.  Defs.' Answers to Pl.'s First Set of Interrogs. 8, Pl.'s Mot. Summ. J. App. 632, ECF No. 33-13 at 21.

Following these incidents, the Warden at Hill, Stephanie Dorethy, explored whether she could require Plaintiff to participate in a fitness for duty evaluation.  IDOC did not pursue a fitness for duty evaluation, however, opting instead to require Plaintiff to recertify her FMLA "[d]ue to recent incidents . . . at work."  Request for Recertification, Pl.'s Mot. Summ. J. App. 752, ECF No. 33-15 at 20.

### III. Plaintiff's December 2015 FMLA Paperwork

In December 2015, Plaintiff submitted FMLA paperwork for 2016.  She provided a certification form from her health care provider, Debra Hayes.  Hayes explained Plaintiff was unable to perform her job duties when "she has flare up of her stress/anxiety," "s/s are transient," "stress causes panic attack," and "[s]he cannot effectively perform job duties as CO while having panic attacks."  Dec. 2015 FMLA Certification 3–4, Pl.'s Mot. Summ. J. App. 1004–05, ECF No. 33-23 at 3–4.  Dorethy and Tammy Morgan, a human resources representative at Hill, reviewed the certification.  Dorethy believed it was insufficient to determine whether Plaintiff

was entitled to FMLA and also raised concerns about Plaintiff's ability to perform her job duties. Morgan drafted a list of questions and points of clarification for Hayes and sent it to Dorethy for approval. Dorethy approved it.

On January 11, 2016, Morgan sent a memorandum to Hayes "for authenticity and clarification" of the certification pursuant to 29 C.F.R. § 825.307(a).[3] Mem. Jan. 11, 2016, Pl.'s Mot. Summ. J. App. 894, ECF No. 33-18 at 35. Among other things, the memorandum asked, with reference to the job description for correctional officer, "[w]ill the employee's condition pose a threat or harm to the employee or others should the flare up occur while performing the duties of a Correctional Officer in a prison environment where several things could happen to put lives in jeopardy?" *Id.* Hayes responded on January 12, 2016. She wrote: "when patient has escalation of anxiety she is not able to function safely in her work environment leaving self and inmates/co-workers in jeopardy." Hayes Fax Jan. 12, 2016 4, Pl.'s Mot. Summ. J. App. 1012, ECF No. 33-23 at 11. IDOC did not advise Plaintiff it was going to reach out to Hayes or give Plaintiff an opportunity to cure any perceived deficiencies in the paperwork before doing so.

### IV. Plaintiff's Placement on Leave

Following receipt of the updated FMLA certification from Hayes, Dorethy communicated with her superior, Deputy Director David Gomez, as well as IDOC's labor relations and legal departments. Dorethy later wrote "it was determined that an immediate course of action would have to take place by placing her on administrative leave." She also

---

[3] 29 C.F.R. § 825.307(a) authorizes an employer to contact an employee's health care provider to authenticate and clarify a certification "after the employer has given the employee an opportunity to cure any deficiencies[.]" "[A]uthentication means providing the health care provider with a copy of the certification and requesting verification that the information contained on the certification form was completed and/or authorized by the health care provider who signed the document[.]" *Id.* "Clarification means contacting the health care provider to understand the handwriting on the medical certification or to understand the meaning of a response." *Id.* "Employers may not ask health care providers for additional information beyond that required by the certification form." *Id.*

wrote "[l]abor and myself were adamant that she not be placed on a paid leave however they advised me to check with legal[.]"  Dorethy Email Jan. 13, 2016, Pl.'s Mot. Summ. J. App. 790, ECF No. 33-16 at 21.

On the evening of January 12, 2016, Plaintiff was called to a meeting with, among others, Dorethy and Morgan.  Dorethy told Plaintiff she was being placed on an administrative leave of absence with pay "based on the medical documentation received by her doctor . . . stating 'when patient has escalation of anxiety she is not able to function safely in her work environment leaving self and inmates/co-workers in jeopardy.'"  Incident Report Jan. 12, 2016 (Dorethy), Pl.'s Mot. Summ. J. App. 721, ECF No. 33-14 at 30.  In conjunction with the meeting, Dorethy issued a "Stop Order" barring Plaintiff from entering Hill without Dorethy's authorization "until further notice." Stop Order Jan. 12, 2016, Pl.'s Mot. Summ. J. App. 786, ECF No. 33-16 at 17.

Dorethy emailed Gomez about what had occurred and he, in turn, informed IDOC's Chief of Staff Edwin Bowen.  *See* Gomez Email Jan. 12, 2016, Pl.'s Mot. Summ. J. App. 787, ECF No. 33-16 at 18 ("Boss [Bowen], Warden Dorethy placed [Cozad] on administrative leave pursuant to paperwork . . . from [her] doctor. Please note page 6 of 10 'when patient has escalation of anxiety she is not able to function safely in her work environment leaving self and inmates/co-workers in jeopardy[.]'").  Bowen responded on January 13, 2016, in an email from his secretary, Karey Wanless.  Wanless Email Jan. 13, 2016, Pl.'s Mot. Summ. J. App. 795, ECF No. 33-16 at 26.  The email stated: "This Administrative Leave is denied per Chief Bowen . . . this employee needs to use sick time intermittently.  If she exhaust [sic] her sick time, then she will need to be placed on a non-occupational medical leave and can return once she has approval from her doctor."  *Id.*

Thereafter, Morgan contacted Plaintiff and told her to report to Hill, which she did, meeting with, among others, Dorethy and Morgan. Dorethy told Plaintiff that her administrative leave with pay had been denied and that she was being placed on a non-occupational disability leave of absence without pay. Plaintiff was presented with paperwork effectuating the disability leave. Plaintiff signed the paperwork, which indicates she approved the leave. *See* Personnel Action Form, Pl.'s Mot. Summ. J. App. 723, ECF No. 33-14 at 32. However, the parties agree Plaintiff did not seek the disability leave of absence and that it was mandated by IDOC.

The Hill Employee Handbook describes a non-service connected disability leave of absence.[4] Hill Emp. Handbook 15, Pl.'s Mot. Summ. J. App. 596, ECF No. 33-12 at 27. Such a leave "accommodate[s] an employee's temporary illness," requires supporting documentation from a doctor, and lasts for the duration of the employee's disability per her doctor's recommendation. *Id.* The Handbook also addresses how the leave interacts with an employee's FMLA entitlement. "If an employee goes on a . . . Non-Service Connected Disability Leave of Absence . . . if it is for a reason consistent with the [FMLA], the absence will count against an employee's annual FMLA entitlement." *Id.* at 18.

**V. Events Related to Plaintiff's Reinstatement**

Toward the end of January 2016, Plaintiff requested to return to work and, in the ensuing months, made several additional requests. In March, she submitted a letter from Hayes, which stated "Stacey may return to work on 03/04/16 because her Hashimoto thyroiditis is controlled." Hayes Letter Mar. 4, 2016, Pl.'s Mot. Summ. J. App. 728, ECF No. 33-14 at 37.

On January 27, 2016, Morgan received an FMLA Designation Notice from the FMLA coordinator at Shared Services, an Illinois entity that provides administrative assistance to IDOC,

---

[4] The terms non-occupational disability leave of absence and non-service connected disability leave of absence are used interchangeably in the record.

approving Plaintiff for FMLA for the twelve-month period between January 13, 2016, and

January 12, 2017.  The designation notice indicates that Plaintiff was approved for a twelve-

week continuous leave period from January 13, 2016 (the date she was placed on a disability

leave without pay), to April 6, 2016, as well as intermittent absences for medical appointments

and flare ups.  The designation notice does not indicate Plaintiff would be required to submit a

fitness-for-duty certification before returning to work.[5]  IDOC never provided Plaintiff with this

designation notice.

 Once Plaintiff exhausted her twelve weeks of FMLA, Shared Services prepared a letter to

send to Plaintiff advising her that she needed to supply additional medical documentation to

remain on disability leave.[6]  Dorethy and Morgan directed Shared Services not to send this letter

because "[t]he doctor could come back saying she is fine to return to work."  Morgan Email May

10, 2016, Pl.'s Mot. Summ. J. App. 822, ECF No. 33-17 at 9.  Shared Services did not send the

letter, but sent a similar letter in September 2016 advising Plaintiff her disability leave would

expire October 24, 2016.  In November, Dorethy and Morgan began to work on setting up a

fitness for duty evaluation for Plaintiff.

 Plaintiff participated in a fitness for duty evaluation on January 16, 2017, with Dr. Terry

Killian, a psychiatrist.  Dr. Killian tendered a written report, which concluded Plaintiff was fit for

duty as a correctional officer.  On January 30, 2017, Plaintiff was reinstated in her position as a

correctional officer at Hill.  Plaintiff was off of work from her position with IDOC from January

14, 2016, to January 29, 2017, without pay.

---

[5] An employer may require an employee on FMLA to provide a fitness for duty certification to return to work, but
the employer must provide notice of this requirement in the designation notice.  29 C.F.R. § 825.300(d)(3).

[6] It appears from the record that although Plaintiff was placed on disability leave against her wishes, which IDOC
does not dispute, Shared Services treated the leave as if she had requested it, including sending Plaintiff letters
asking for renewed documentation from her doctor indicating that disability leave was still needed.

## VI.  Instant Litigation

Plaintiff filed a ten-count complaint.  Am. Compl., ECF No. 17.  Only three counts are relevant to the instant motions for partial summary judgment.  Count VIII alleges violations of the FMLA.  Count IX alleges a violation of Plaintiff's constitutional due process rights pursuant to 42 U.S.C. § 1983.  Count X alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213.  Plaintiff moves for summary judgment as to Counts VIII, IX, and X.  Defendants move for summary judgment as to Counts IX and X.

## DISCUSSION

## I.  Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997).  The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).  "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole."  *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quoting *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994)).

## II.  Analysis

### a. Count VIII

The FMLA entitles eligible employees to twelve workweeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the [employee's] position[.]"  29 U.S.C. § 2612(a)(1)(D).  Employers are prohibited from interfering with, restraining, or denying an employee's exercise or attempt to exercise any FMLA rights.  29 U.S.C. § 2615(a)(1).  To prevail on a § 2615 claim, a plaintiff must show: "(1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled."  *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).  Defendants dispute only the fifth element.  Defs.' Resp. 5, ECF No. 40.

### i. Additional Medical Information from Hayes

Plaintiff argues Defendants violated 29 C.F.R. § 825.307(a), which authorizes an employer to contact an employee's health care provider to clarify and authenticate medical certification "after . . . giv[ing] the employee an opportunity to cure any deficiencies," but prohibits the employer from seeking medical information beyond that required by the certification form.  Pl.'s Mem. Supp. Mot. Summ. J. 40, ECF No. 34.  Plaintiff alleges Defendants contacted Hayes about her December 2015 FMLA certification without first giving her an opportunity to cure any perceived deficiencies and that they sought medical information beyond that required by the certification form.  *Id.* at 40–45.  Defendants do not contest these allegations.

But Plaintiff cannot prevail on her interference claim because she cannot show she was denied FMLA benefits to which she was entitled.  *See Smith*, 560 F.3d at 699 & n.4 (noting with

respect to the defendant's violation of an earlier version of this regulation that "the FMLA provides no remedy for such a violation unless it interfered with or restrained an employee's rights under the act"); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 910 (7th Cir. 2008) ("But even if [the employer] was obliged to advise [the plaintiff] that his certification was incomplete, there was no harm caused by [the employer's] breach of this obligation unless [the plaintiff] would have been able to cure the deficiency in a manner that entitled him to FMLA leave."). Plaintiff claims IDOC used the information it wrongfully obtained from Hayes to force her to take an unpaid leave of absence. Pl.'s Mem. Supp. Mot. Summ. J. 45. That may be true, but this was not a denial of FMLA benefits. *See Huffman v. Speedway LLC*, 621 Fed. App'x 792, 796–97 (6th Cir. 2015) ("While being forced to take unpaid leave has an effect similar to being suspended without pay, the [FMLA] does not grant employees the right to be free from suspension."); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006) ("The FMLA does not create a right to be free from suspension with or without pay[.]"). Plaintiff's motion for summary judgment as to this claim is denied.

### ii.  FMLA Documentation Claims

Plaintiff raises three claims regarding IDOC's failure to provide her with proper FMLA documentation: an eligibility notice, in violation of 29 C.F.R. § 825.300(b); a rights and responsibilities notice, in violation of 29 C.F.R. § 825.300(c); and a designation notice, in violation of 29 C.F.R. § 825.300(d). Pl.'s Mem. Supp. Mot. Summ. J. 46–50. Defendants admit these violations. Nonetheless, Plaintiff cannot demonstrate she was denied any FMLA benefits as a result. She states that because she submitted her own certification form in December 2015, "there was no need that an eligibility notice be provided to her." *Id.* at 47. Plaintiff makes no argument as to what benefits she was denied as a result of Defendants' failure to provide a rights

and responsibilities notice. *See id.* at 47–48. Regarding Defendants' failure to provide her the January 27, 2016 designation notice, she argues "[t]he lack of any communication . . . instructing [Plaintiff] that she must present medical documentation prior to returning to work prejudiced her by making any leave much longer than what it should have been." *Id.* at 50. Defendants' "lack of communication"—as opposed to their failure to reinstate her as discussed below—cannot be said to have made Plaintiff's leave longer than it should have been. Plaintiff cannot show she was denied benefits as a result of Defendants' FMLA documentation failures and her motion for summary judgment as to these claims is denied.

### iii. Forced Continuous Leave

Plaintiff claims Defendants interfered with her FMLA rights by forcing her to take a continuous leave period versus the intermittent leave she requested. *Id.* at 45. The FMLA entitles eligible employees to leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of [her] position[.]" 29 U.S.C. § 2612(a)(1)(D). A person's FMLA entitlement "may be taken intermittently . . . when medically necessary." *Id.* § 2612(b)(1).

Several courts have concluded that placing an eligible employee with a serious health condition on FMLA leave against the employee's wishes does not, in and of itself, violate the FMLA. *See Huffman*, 621 Fed. App'x at 797 ("[I]nvoluntary FMLA leave does not directly injure an employee's FMLA rights."); *Sista*, 445 F.3d at 175 ("The FMLA says nothing about an employer's ability to 'force' an employee to take such leave, and such forced leave, by itself, does not violate any right provided by the FMLA."); *Harvender v. Norton Co.*, No. 96-CV-653 (LEK/RWS), 1997 WL 793085, at *1, 8 (N.D.N.Y. Dec. 15, 1997) (noting the plaintiff's statements that "she did not want to go on [FMLA] leave" were irrelevant where she provided

11

her employer with a doctor's note stating she could not perform an essential function of her job due to her health condition, which led the employer to place her on a twelve-week FMLA leave); *Love v. City of Dallas*, No. 3:96-CV-0532-R, 1997 WL 278126, at *6 (N.D. Tex. May 14, 1997) ("Employers who force employees to take unpaid leave under the FMLA are really only: (1) placing the employee on involuntary leave, and then (2) giving the employee the option of availing him or herself of the benefits of the FMLA during the first twelve weeks of such leave.").  Plaintiff does not deny that she has a "serious health condition," as that term is defined by the FMLA, or that, as a result, the leave mandated in January 2016, on the basis of her serious health condition, was FMLA-qualifying.

But Plaintiff's claim is more specific than that she was placed on involuntary FMLA leave; she claims she was required to take a continuous leave when she had requested intermittent leave.  In *Jordan v. Beltway Rail Co. of Chicago*, No. 06 C 6024, 2009 WL 537053 (N.D. Ill. Mar. 4, 2009), the plaintiff raised a similar claim.  He requested intermittent leave, submitting a certification form stating he would need time off "on occasions when there is actual or perceived harassment on [the] job, at which times [the plaintiff] would be unable to perform safety type related tasks."  *Id.* at *1 (quotation marks omitted).  His employer placed him on a full leave.  *Id.* at *2.  The court held that this did not violate the plaintiff's FMLA rights.  *Id.* at *4.  The plaintiff's request for intermittent leave "alert[ed] Defendants to a potential safety hazard should he become suddenly unable to perform the functions of his position."  *Id.* "Because the event . . . trigger[ing] [the plaintiff's] inability to perform essential functions of his job could happen at any time without notice, [the employer] was justified in relying on [the plaintiff's] doctor's representation of his serious health condition and requiring him to take full leave pending the resolution of the condition."  *Id.*

12

Similarly, Plaintiff's certification form alerted IDOC to a potential safety hazard should she suffer a panic attack while on duty.  Plaintiff's certification form indicated that should this occur, Plaintiff would be unable to perform the essential functions of her job.  The certification also indicated Plaintiff's panic attacks were caused by stress, a trigger that would almost certainly arise in a correctional setting.  Given the nature of Plaintiff's serious health condition, Defendants did not violate Plaintiff's FMLA rights by placing her on an involuntary continuous period of leave.  Plaintiff's motion for summary judgment as to this claim is denied.

### iv.  Right to Reinstatement

Plaintiff alleges Defendants violated her FMLA right to reinstatement.  When the period of FMLA-qualified leave expires, an employee is entitled to be reinstated to the position she held at the time she went on leave.  29 U.S.C. § 2614(a)(1)(A); 29 C.F.R. § 825.214 ("On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced . . . .").  The Seventh Circuit has held "that once an employee submits a statement from her health care provider which indicates that she may return to work, the employer's duty to reinstate her has been triggered under the FMLA." *James v. Hyatt Regency Chicago*, 707 F.3d 775, 780 (7th Cir. 2013) (quoting *Brumbalough v. Camelot*, 427 F.3d 996, 1004 (6th Cir. 2005)).  However, "[e]mployers are under no obligation to restore an employee to his or her position if the employee is unable to perform the essential functions of the job." *James*, 707 F.3d at 781.  "Similarly, an employer has no responsibility to restore a person's job if the employee exceeds the 12-week period." *Evans v. Cnty. of Cook*, No. 14-CV-7402, 2016 WL 2619713, at *3 (N.D. Ill. Feb. 18, 2016).

Plaintiff has produced evidence that, before the expiration of her twelve-week FMLA leave, she informed IDOC of her desire and ability to return to work.  She submitted a letter from

Hayes stating "Stacey may return to work on 03/04/16 because her Hashimoto thyroiditis is controlled."  Hayes Letter Mar. 4, 2016; Cozad Dep. 85:10–22.[7]  This letter triggered IDOC's duty to reinstate Plaintiff.  As Plaintiff was not reinstated at the expiration of her twelve-week FMLA leave, Defendants interfered with Plaintiff's FMLA rights.  Plaintiff has also demonstrated prejudice.  *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (noting that an employee is not entitled to relief on an FMLA interference claim "unless the employee has been prejudiced by the violation").  By interfering with Plaintiff's FMLA right to reinstatement, Plaintiff remained on an involuntary leave without pay until January 2017. Plaintiff is entitled to summary judgment on this claim.

> **b.   Count IX[8]**

Plaintiff argues, pursuant to 42 U.S.C. § 1983, Dorethy violated her due process rights when she placed her on leave without pay.  Pl.'s Mem. Supp. Mot. Summ. J. 51–57.  Defendants argue Dorethy was not personally involved in the alleged constitutional deprivation and therefore cannot be held liable under § 1983.  Defs.' Mem. Supp. Mot. Summ. J. 13–14, ECF No. 36. Alternatively, Defendants argue Plaintiff received adequate process and, regardless, Dorethy is entitled to qualified immunity.  *Id.* at 14–19.

---

[7] Defendants dispute Plaintiff's statement of fact that Dorethy received this letter.  Defs.' Resp. 2.  Defendants claim Plaintiff cites no evidence in the record supporting this assertion.  *Id.*  Dorethy testified at her deposition that she recognized and received in March 2016 the deposition exhibit marked as "Stephanie Dorethy Deposition Exhibit Number 19."  Dorethy Dep. 107:7–24.  Plaintiff's attorney did not identify the document by name or by describing its contents in the deposition transcript.  He has, however, provided the Court with the marked exhibits used in the deposition.  The record includes the document that was marked as "Stephanie Dorethy Deposition Ex. 19."  *See* Hayes Letter Mar. 4, 2016.  Defendants do not dispute the authenticity of Hayes's letter or that this was the document marked as Exhibit 19 in Dorethy's deposition.

[8] Plaintiff's amended complaint sought equitable relief for the alleged violation of her due process rights in the form of reinstatement to her position as correctional officer.  Am. Compl. ¶ 213.  Plaintiff has since been reinstated, resuming her position as correctional officer on January 30, 2017.  Both parties agree this renders moot Plaintiff's claim for equitable relief.  Defs.' Mem. Supp. Mot. Summ. J. 13; Pl.'s Resp. 19.  Additionally, as John R. Baldwin was named in his official capacity as a Defendant only for the purpose of effectuating equitable relief, he should be dismissed from the suit.  Pl.'s Resp. 19.  The Clerk is directed to terminate Defendant Baldwin.

### i.  Dorethy's Personal Involvement

"To recover damages under . . . [§] 1983, a plaintiff must establish [the] defendant['s] personal responsibility for the claimed deprivation of a constitutional right." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).  "[A] defendant's direct participation in the deprivation is not required." *Id.*  It is enough if a defendant "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Id.*; *see also Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions."); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("[S]ome causal connection or affirmative link between the action complained about and the official sued is necessary[.]").

As an initial matter, as Warden, Dorethy was unquestionably part of a chain of command. She testified at her deposition that she placed Plaintiff on leave with pay at the direction of Deputy Director Gomez, her immediate superior.  Dorethy Dep. 91:3–92:13, Pl.'s Mot. Summ. J. App. 107, ECF No. 33-1 at 113.  And the evidence demonstrates Plaintiff's leave was switched from with pay to without pay at Chief of Staff Bowen's direction.  Wanless Email Jan. 13, 2016. But the Seventh Circuit has rejected the broad proposition "that an individual is relieved of personal responsibility for perpetrating unlawful acts against another simply because he is acting as an agent or subject to a superior's orders." *Busche v. Burkee*, 649 F.2d 509, 517 (7th Cir. 1981); *see also N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 933 (W.D. Wis. 2009) ("[C]ourts often reject a defense of 'I was just following orders' when it is asserted by individual defendants in a civil or criminal case, including cases under § 1983.").  However, "employees who are just following orders are generally not liable absent some plausible

inference that they know carrying out those orders violate an individual's constitutional rights." *Shanklin v. Liberty Health Care Corp.*, No. 16-cv-4010, 2016 WL 1069945, at *1 (C.D. Ill. Mar. 18, 2016).

The evidence shows Dorethy was not "just" following orders.  *See id.*  Dorethy was involved in the assessment of Plaintiff's December 2015 FMLA certification, determining it raised concerns about Plaintiff's ability to do her job.  This led to the January 11, 2016 memorandum being sent to Plaintiff's health care provider, a course of action Dorethy consented to.  It was the response to this memorandum that was the basis for placing Plaintiff on leave. Following receipt of the updated certification, the evidence shows Dorethy was an active participant in the discussion as to the appropriate course of action.  Dorethy later wrote:

> Due to the severity of the comments I considered this an emergency and began contacting the Deputy [Gomez], Labor and Legal for direction.  After several emails and phone calls back and forth it was determined that an immediate course of action would have to take place by placing her on administrative leave . . . Labor and myself were adamant that she not be placed on a paid leave however they advised me to check with legal[.]

Dorethy Email Jan. 13, 2016.  Considering this email was sent following Plaintiff's placement on leave with pay, it is reasonable to infer legal advised against placing Plaintiff on leave without pay.  This evidence also creates a plausible inference Dorethy knew carrying out Bowen's order to place Plaintiff on a leave without pay violated Plaintiff's rights.  *See Shanklin*, 2016 WL 1069945, at *1.

*Searles v. Bd. of Educ. of the City of Chi./Chi. Sch. Reform Bd. of Trs.*, No. 03 C 8966, 2004 WL 1474583 (N.D. Ill. June 29, 2004), provides a useful comparison.  In that case, the court held that the defendant principal was not personally involved in the alleged due process violation that occurred when the plaintiff teacher was placed on an involuntary medical leave of absence due to concerns about her fitness for duty.  *Id.* at *4.  Three allegations connected the

principal to the alleged violation: first, she advised the board of her concerns about the plaintiff's

fitness, which led it to require an evaluation of the plaintiff that concluded she was unfit for duty;

second, she advised the plaintiff that the board told her to relieve the plaintiff of her duties

pending the outcome of the evaluation; and third, she barred the plaintiff from entering the

school.  *Id.*  In addition, under an applicable Illinois statute, the authority to "employ, discharge,

or layoff [was] vested solely with the board."  *Id.* (quotation marks omitted).  The court held that

the board, not the principal, fired the plaintiff.  *Id.*  The principal's actions were "purely

ministerial" and therefore she could not be liable under § 1983.  *Id.*

Like the *Searles* principal, Dorethy advised her superiors of her concerns about Plaintiff's

fitness for duty, she communicated to Plaintiff the decision to place her on leave without pay,

and she barred Plaintiff from entering Hill.  But unlike the *Searles* principal, Dorethy played a

prominent role in facilitating the events related to the alleged constitutional deprivation and

participated in the discussion as to the appropriate course of action.  A jury could not reasonably

conclude Dorethy's actions were merely ministerial, *see id.*, or that Dorethy did not personally

participate in the alleged constitutional deprivation.

### ii.  How Much Process Was Due?

To establish a procedural due process claim, a plaintiff must demonstrate: (1) the

defendant deprived her of a constitutionally protected property interest; and (2) the deprivation

occurred without due process of law.  *Williams v. Seniff*, 342 F.3d 774, 787 (7th Cir. 2003).

Dorethy contests only the second issue.  Due process generally requires notice and an

opportunity to be heard before deprivation of a significant property interest.  *Goss v. Lopez*, 419

U.S. 565, 579 (1975); *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).  But "due process is

flexible"; it "calls for such procedural protections as the particular situation demands."

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  "[I]n limited cases demanding prompt action," "[an] important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may . . . justify postponing the opportunity to be heard until after the initial deprivation."  *FDIC v. Mallen*, 486 U.S. 230, 240 (1988).

To determine the amount of process due in a particular case, courts balance three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest . . . ." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Plaintiff has a significant private interest in continued employment.  *Mallen*, 486 U.S. at 240 ("We have repeatedly recognized the severity of depriving someone of his or her livelihood."); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985).  However, "the length and finality of the deprivation" are also relevant, *Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (quotation marks omitted), and here, Plaintiff did not face termination, but a period of leave without pay, albeit it of undefined duration.  Plaintiff's private interest must be balanced against the governmental interest at stake—removing law enforcement officers who are unfit for duty.  This interest is also very strong.

In similar situations, courts have found the governmental interest in having fit personnel in important public positions overrides the private interest in continued employment such that due process does not require a pre-deprivation hearing.  *Gilbert*, 520 U.S. at 932–34 (concluding the plaintiff police officer was not entitled to a pre-deprivation hearing where he was suspended without pay after he was arrested and formally charged with a felony); *Mallen*, 486 U.S. at 240–41 (concluding the plaintiff bank employee was not entitled to a pre-deprivation hearing where

he was suspended after being indicted by a grand jury); *Newman v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 594 F.2d 299, 300–304 (2d Cir. 1979) (holding the plaintiff teacher was not entitled to a pre-deprivation hearing where she was placed on a leave of absence without pay due to mental instability after a fitness for duty evaluation concluded she was "[n]ot fit at present for teaching duty"); *Ceko v. Martin*, 753 F. Supp. 1418, 1422–26 (N.D. Ill. 1990) (holding the plaintiff 911 dispatcher was not entitled to a pre-deprivation hearing where he was placed on a leave of absence without pay after a fitness for duty evaluation concluded he suffered from schizophrenia and was "definitely unfit").  But, in these cases, the conclusion that there was no due process violation rests on a finding that, not only did the compelling government interest override the private interest in continued employment, but also, as to the final *Mathews* factor, that there was "substantial assurance that the deprivation [wa]s not baseless or unwarranted." *Mallen*, 486 U.S. at 240.  In *Gilbert* and *Mallen*, a "finding of probable cause by an independent body demonstrate[d] that the suspension[s] [were] not arbitrary."  *Mallen*, 486 U.S. at 244; *Gilbert*, 520 U.S. at 934.  Similarly, in *Newman* and *Ceko*, a finding by an independent doctor following a fitness for duty evaluation that the plaintiffs were unfit for duty provided adequate assurances that the deprivation of their paychecks was not baseless.  *Newman*, 594 F.2d at 300; *Ceko*, 753 F. Supp. at 1425.

    In this case, by contrast, the deprivation of Plaintiff's pay was not accompanied by adequate assurances that it was not baseless or unwarranted.  Plaintiff was deprived of her salary on the basis of two sentences from her FMLA certification about her ability to perform her job duties while she was having a panic attack, one of which IDOC had read without alarm almost a year earlier in Plaintiff's January 2015 FMLA certification.  These two sentences were not an adequate substitute for a fitness for duty evaluation.  Nor did these sentences provide

"independent corroboration" that IDOC's evidence was "sufficiently reliable" to deprive Plaintiff
of her pay without an opportunity to be heard.  *See Velazquez v. Office of the Ill. Sec'y of State*,
No. 09 CV 3366, 2011 WL 6257298, at *8 (N.D. Ill. Dec. 14, 2011) (concluding the plaintiff
was denied due process where he was placed on a leave of absence without pay because there
was not adequate assurance against baselessness where there was no "independent
corroboration" of the employer's evidence of the plaintiff's misconduct such that the plaintiff
could be denied a pre-deprivation opportunity to be heard).  Rather, the certification paperwork
was itself IDOC's evidence, from which IDOC concluded Plaintiff was unfit for duty.  *See id.*
("[T]he state actor imposing the deprivation cannot be the sole determiner that existing evidence
is sufficiently reliable to allow for withholding of basic pre-deprivation procedural rights without
significant risk of error.").  And with Plaintiff's mental fitness for duty at issue, the risk of error
was not trivial.  *See Newman*, 594 F.2d at 304 (noting "the inexactness of psychiatry as a
science" yields a risk of erroneous deprivation); *Ceko*, 753 F. Supp. at 1426 ("[P]rofessional
judgments concerning mental fitness are just as likely to differ as the observations of layman
regarding simple issues of fact." (quotation marks omitted)).

        The probable value of a pre-deprivation fitness for duty evaluation would have been
substantial.  A doctor would have assessed the nature of Plaintiff's health condition, whether it
was adequately controlled by medication, its historical impact on her ability to perform her job
duties, her ability to recognize the early warning signs of a panic attack, and her use of FMLA
intermittent leave to cope with these episodes.  This added value is reflected in Dr. Killian's
January 2017 report.  Such an evaluation was necessary, under the facts of this case, to ensure
the deprivation of Plaintiff's pay was not baseless or unwarranted.  *See Mallen*, 486 U.S. at 240.
A fitness for duty evaluation would have intruded on the governmental interest, but if an

"employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." *Loudermill*, 470 U.S. at 544–45; *cf. Gilbert*, 520 U.S. at 932 (noting that suspension with pay is not required where there are adequate assurances the deprivation is not baseless, such as an arrest and the filing of formal charges). Plaintiff was denied due process.

### iii. Qualified Immunity

Defendants argue Dorethy is entitled to qualified immunity. Defs.' Mem. Supp. Mot. Summ. J. 18. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[O]nce the public official raises the defense of qualified immunity, the plaintiff bears the burden of showing (1) whether . . . she has asserted a violation of a constitutional right, and (2) whether the applicable constitutional standards were clearly established at the time in question." *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir. 1998). Plaintiff has established her due process claim, so the Court turns to the second question.

A constitutional right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right[.]" *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quotation marks omitted). "[H]owever, an official action is not protected by qualified immunity only when the very action in question has previously been held unlawful, rather the unlawfulness must be apparent in light of the pre-existing law." *Id.* (quotation marks omitted). In 2016, it was well established that a person is entitled to notice and an opportunity to be heard before being deprived of a significant property interest. *Loudermill*, 470 U.S. at 542; *Goss*, 419 U.S. at 579; *Boddie*, 401 U.S. at 379. It was

also well established that government officials may dispense with pre-deprivation process only where there is a need for prompt action, there is an important governmental interest at stake, and there is "substantial assurance that the deprivation is not baseless or unwarranted[.]"  *Mallen*, 486 U.S. at 240; *Barry v. Barchi*, 443 U.S. 55, 64–66 (1979).  In light of these well-established principles, it was objectively unreasonable for Dorethy to place Plaintiff on an involuntary leave without pay without any opportunity to be heard and without substantial assurance that she was unfit to fulfill the duties of a correctional officer.  Plaintiff is entitled to summary judgment on the due process claim.

### c.  Count X

Plaintiff alleges she was "regarded as" disabled and Defendants failed to provide reasonable accommodation.  Pl.'s Mem. Supp. Mot. Summ. J. 57; Pl.'s Resp. 8, ECF No. 38 ("Cozad has never argued that she suffers from an actual medical condition that renders her disabled.").  This claim is a nonstarter.  Persons who are disabled, as defined by the ADA, because they are "regarded as" disabled are not entitled to reasonable accommodation.  42 U.S.C. § 12201(h).

Perhaps realizing this roadblock, Plaintiff argues in response to Defendants' motion that her claim is not failure to accommodate, but disparate treatment.  Pl.'s Resp. 8–9.  Plaintiff argues "she was not disabled when she was removed from her position and that the DOC impermissibly removed her because it believed she was disabled."  *Id.* at 9 n.3.  Plaintiff concedes this is a different theory of liability than that presented in her amended complaint.  *Id.*[9]

"The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996).  "When a new argument is

---

[9] Additionally, Plaintiff's own motion for summary judgment argues only that IDOC violated the ADA because they failed to reasonably accommodate Plaintiff's disability.  She makes no argument as to disparate treatment.

made in summary judgment briefing, the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories plaintiff has pursued so far." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). "In the former situation, the plaintiff may be attempting in effect to amend [her] complaint, and the district court has discretion to deny the de facto amendment and to refuse to consider the new factual claims." *Id.* (emphasis omitted).

An ADA plaintiff may establish disparate treatment in two ways—the direct method or the indirect method. In her response, Plaintiff appears to rely on the direct method of proof, which requires her to show: (1) she was disabled, as defined by the ADA; (2) she was qualified to perform the essential functions of the job with or without accommodation; and (3) she was subjected to an adverse employment action because of her disability. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). In her complaint, Plaintiff alleges she was disabled and that she was able to perform the essential functions of correctional officer. But the complaint does not allege that IDOC placed her on an unpaid leave because it perceived her as disabled. Instead, it alleges she requested reasonable accommodation by being permitted to utilize FMLA intermittent leave and that IDOC refused to engage in a meaningful interactive process. Am. Compl. ¶¶ 217–19. It cannot be fairly said that these allegations "laid the foundation" for a claim of disparate treatment. *See Vidimos, Inc.*, 99 F.3d at 222. Accordingly, in the interest of judicial economy, the Court exercises its discretion to decline to consider Plaintiff's new factual theory of liability at this late stage. Defendants are entitled to summary judgment as to Count X.

## CONCLUSION

Accordingly, Plaintiff's motion for partial summary judgment, ECF No. 33, is GRANTED IN PART and DENIED IN PART. Plaintiff is entitled to summary judgment on her

FMLA interference claim regarding her right to reinstatement and her due process claim, Count

IX, except for her claim for equitable relief, which is MOOT.  The Clerk is directed to terminate

Defendant Baldwin as a defendant in this matter.  Plaintiff's motion is denied as to the remaining

FMLA claims in Count VIII and Count X.  Defendants' motion for partial summary judgment,

ECF No. 35, is also GRANTED IN PART and DENIED IN PART.  Defendants are entitled to

summary judgment on Count X.

     Entered this 17th day of April, 2018.

s/ Sara Darrow
_____
SARA DARROW
UNITED STATES DISTRICT JUDGE
